UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 9:24-cv-80967-AHS

In re:

TGP COMMUNICATIONS, LLC,

      Appellant,

  v.

RUBY FREEMAN; WANDREA
ARSHAYE MOSS; AND DR.
ERIC COOMER,

      Appellees.
_____/

**APPELLANT'S CORRECTED MEMORANDUM OF LAW IN
OPPOSITION TO APPELLEE DR. ERIC COOMER'S MOTION TO DISMISS**

Appellant TGP Communications, LLC ("TGP" or "Appellant") hereby files its Memorandum of Law in Opposition to Appellee Dr. Eric Coomer's ("Appellee") Motion to Dismiss (ECF No. 31), filed on November 8, 2024. TGP did not purposefully neglect to file its initial brief and it was error for this Court to deny TGP an extension of time for its submission on account of the circumstances of prior counsel.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**1.0    INTRODUCTION**

The Court should reject Appellee's Motion to Dismiss as it does not meet the standard necessary for dismissal of a bankruptcy appeal. And dismissal sets a negative public policy result.

**2.0    FACTUAL BACKGROUND**

On April 24, 2024, Appellant filed a Voluntary Petition for Bankruptcy Relief ("Bankruptcy Case") under Chapter 11 of Title 11 of the United States Bankruptcy Court for the Southern District of Florida ("Bankruptcy Court"). On May 31, 2024, Ruby Freeman and Wandrea

- 1 -
Corrected Opposition to Motion to Dismiss
9:24-cv-80967-AHS

Moss filed a Motion to Dismiss TGP's Bankruptcy Case, which Appellee later joined on June 8, 2024. On July 25, 2024, the Bankruptcy Court granted the Motion to Dismiss. On August 8, 2024, Appellant filed a Notice of Appeal (ECF No. 1) in the Bankruptcy Case, and the matter was transmitted to this Court on September 9, 2024 (ECF No. 23).

On October 9, 2024, Appellant's prior counsel filed a Motion for an Extension of Time ("First Motion") to file its Initial Brief, citing issues with lead counsel dealing with departures at his law firm and the unexpected death of his law partner, which the Court granted (ECF No. 26). On October 29, 2024, Appellant's prior counsel filed a second Motion for an Extension of Time to files its Initial Brief ("Second Motion"), citing an exacerbation of prior counsel's circumstances, which the Court also granted (ECF No. 29). The second requested extension was, inexplicably, for merely 4 days, which placed the deadline on November 4, 2024. Prior counsel missed his anticipated deadline and Dr. Coomer moved to dismiss on November 8, 2024.

Upon TGP discovering on November 8, 2024, that Attorney Houston had missed the deadline and Dr. Coomer moved to dismiss, TGP took immediate action, securing substitute counsel and having that counsel seek an emergency extension to enable it to familiarize itself with the case and draft the initial brief. *See* **Exhibit 1**, Declaration of John Burns ("Burns Decl.") at ¶ 4; *see also* ECF Nos. 32 & 33. Despite this, on November 20 & 21, 2024, the Court denied substitute counsel's modest request for extension.[1] ECF Nos. 37 & 38. Given the prior submissions and the fact that Attorney Houston's partner's death did not seem to be a matter of a factual dispute, there should have been no reason for evidence to be submitted with the request. Such should not be fatal to this appeal.

---

[1] Although the November 8 motion for extension sought a November 22 deadline to file the initial brief, the passage of time without a decision necessitated the filing of a supplemental motion for a ten-day deadline instead of a fixed date. (ECF No. 37).

**3.0     LEGAL STANDARD**

As Appellee stated in his Motion to Dismiss, dismissal is "*only* proper where bad faith, negligence or indifference has been shown." *Chittranjan Thakkar v. Noble*, 760 Fed. Appx. 724, 728 (11th Cir. 2019) (emphasis added).  However, also in *Thakkar*, the Eleventh Circuit stated that "dismissal typically occurs in cases showing consistently dilatory conduct or *the complete failure to take any steps other than the mere filing of a notice of appeal*.  *Id* (emphasis added).

**4.0     ARGUMENT**

Dismissal under Fed. R. Bankr. P. 8018(a)(4) is not proper because Appellant has not completely failed to take any steps after the filing of its Notice of Appeal.  The Eleventh Circuit has held that " 'routine dismissal for failure to timely file briefs' is not appropriate." *Tucker v. JP Morgan Chase Bank, N.A. (In re Tucker)*, 665 F. App'x 841, 844 (11th Cir. 2016) (*quoting Brake v. Tavormina (In re Beverly Mfg. Corp.)*, 778 F.2d 666, 667 (11th Cir. 1985)). Rather than applying a "stringent rule of dismissal for failure to timely file briefs," courts in this Circuit apply a "flexible standard" and will dismiss an appeal only where "bad faith, negligence or indifference has been shown." *Id*. (quotations omitted).  While Appellant has requested extensions, its actions since the November 4 deadline has passed have been an attempt to bring the matter back on track with new counsel.  Appellant filed its Third Motion, which requested an extension for an inconsequential amount of time to get affairs in order and proceed with the case.  The Third Motion was denied, but the circumstances still do not substantially demonstrate consistently dilatory conduct or the complete failure to take any steps further than filing a notice of appeal.

TGP does not believe a declaration was necessary to establish that former lead counsel's ("Houston") partner had died, nor does TGP believe that a declaration was needed to show that Houston had stopped communicating with Appellant.  No affidavit, declaration, or other evidence

was required before the Court granted Attorney Houston's prior motions. *See* ECF Nos. 26 & 29. Fed. R. Civ. P. 6(b) does not require an affidavit, declaration, or other evidence. *Contrast* Fed. R. Civ. P. 6(b) (silent as to supporting evidence) *with* Fed. R. Civ. P. 55(a); 56(d); 65(b) (requiring affidavits or declarations in support). As with the prior motions, motions for extension of time are routinely granted upon the representations of counsel.

The undersigned believed that the presumption of good faith afforded to Appellant by the Court by taking the undersigned's word at face value was sufficient to substantiate those claims, especially since they were easily verified, did not present any difficult to believe circumstances, the request was modest, and this very case's prior history evidenced a pattern of granting extensions without need for attachment of sworn statements. Further, speculation, as the Court calls it, was all that Appellant could demonstrate due to the fact that *Houston was not responding*. *See* Burns Decl. at ¶ 5. How could Appellant reasonably and timely obtain a declaration from Houston as to the circumstances if Appellant could not successfully communicate with him? Appellant received repeated promises that the Initial Brief would be filed, and it was not apparent until after the November 4 deadline had passed that the situation was serious enough to require substitution of counsel and another extension of time to allow the undersigned fair time to file. *See* Burns Decl. at ¶ 6. Appellant believes excusable neglect by Houston was satisfactorily shown by stating the circumstances of Attorney Houston's disappearance from this case, hence the need for the substitution of counsel and the Third Motion in the first place. However, even if Houston cannot claim excusable neglect, it is not TGP's fault that its lawyer became unresponsive. To the extent that evidence is now required, Appellant submits the declaration of its general counsel, John Burns, herewith. And so there is no doubt—the failure to file a timely initial brief was not tactical

or purposeful; TGP fully paid for and intended that the brief would be filed and did not know it was not filed until it learned of Dr. Coomer's motion by happenstance. *See* Burns Decl. at ¶ 7.

Appellee's argument that Houston was filing some documents in other matters somehow disproved any struggle or mental health concerns of Houston is insensitive and seems to misunderstand the reality of mental health issues. In fact, it is shocking to the conscience that anyone would take that as proof of anything. While the undersigned is not qualified to testify as to Houston's condition, neither can Dr. Eric Coomer as he is not a medical doctor. It shows a remarkable lack of familiarity with depression, anxiety, and other conditions to believe that an individual is fully functional if they are accomplishing some tasks but failing to accomplish others. It has been shown in medical journals and studies that mental health disorders do not cause a total collapse of productivity, but instead diminished productivity.[2] In a profession that is rife with drug abuse, alcohol abuse, and stress, lawyers and judges alike often lament a lack of civility and the effects of mental health issues in the profession. In fact, some states require CLE hours dealing with these issues.

In 2013, the Florida Supreme Court acknowledged that "surveys of both lawyers and judges continue to reflect [a] lack of professionalism is one of the most significant adverse problems that negatively impacts the practice of law in Florida today." *In re Code for Resolving Professionalism Complaints*, 116 So. 3d 280, 281 (Fla. 2013).[3] "Over two-thirds of The Florida Bar members who responded to a 2011 survey agreed that, in recent years, relationships between attorneys have become more adversarial. The Florida Supreme Court has historically been

---

[2] The Role of Mental Health on Workplace Productivity: A Critical Review of the Literature. https://pmc.ncbi.nlm.nih.gov/articles/PMC9663290/.
[3] Available at: https://www-media.floridabar.org/uploads/2019/03/306901_code20for20resolvin g20professionalism20complaints20sc13-68820updated.pdf?OpenElement.

profoundly concerned with the lack of civility and professionalism demonstrated by some Bar members. The Court has repeatedly ruled that unprofessional behavior is unacceptable. *Fla. Bar v. Norkin*, 132 So. 3d 77, 89 (Fla. 2014). Given the state of the legal profession, it is not surprising that Houston would be under extreme stress given the circumstances of his professional life and of this matter. When someone is under extreme and cumulative stress, they are often overloaded with more than they can cope. As referenced by a senior United States District Judge in an opinion piece for the Florida Bar Journal, practicing mindfulness and civility helps combat the drastic health effects of extreme stress, which is linked to six leading causes of death.[4] Judges are not immune to the effects of stress in the legal profession, either, and so the Court should consider the effect of psychological issues that are statistically likely to be affecting parties, clients, and the Court's staff and colleagues, and recognizing such issues is more than a binary question of "are they functioning or not?"

The Court accuses TGP of *ad hominem* attacks on Appellee's counsel for failing to consent to the extension. To be clear, the criticism which the Court refers to as *ad hominem* attacks were directed *at the legal profession as a whole* (and the plain language of the criticism showed that). One can imagine no other profession where there is no law of physics or medical situation requiring immediacy where one professional would not presumptively grant a short extension to a new colleague, especially in the face of a prior colleague's personal tragedy.

If officers of the court cannot show civility and empathy in the face of a fellow attorney clearly struggling with what can only be a mental health episode (brought on by serious loss), then serious introspection is needed, and it is disappointing that this Court declined to take part in that

---

[4] The Art of Being Mindful in the Legal World: A Challenge for our Times. https://www.floridabar.org/the-florida-bar-journal/the-art-of-being-mindful-in-the-legal-world-a-challenge-for-our-times/.

introspection, instead criticizing TGP for showing compassion toward Attorney Houston by "attempting to protect Attorney Houston's reputation and bar license." This appears to be (and this is speculation) Attorney Houston's darkest hour. If the TGP made a tactical mistake of civility or compassion, then it chooses both civility and compassion.

The Court seems to criticize TGP for its empathy toward Houston's circumstances, but is it not showing fairness, integrity, and civility[5] to show compassion? Houston made an egregious omission by missing deadline, but yelling at him doesn't fix the problem—a reasonable (and in the grand scheme of things, non-prejudicial) extension of time is all that was needed to enable successor counsel to draft and file the initial brief that Houston missed, without piling on him in a time of clear distress.

Should TGP lose automatically because it had the misfortune of being a client when Houston suffered his misfortune? That certainly is not fair. Should the only remedy be to destroy Attorney Houston? Add to his stress? Pile on the poor guy? TGP proudly refuses to do so. And should anyone involved in this case ever find themselves in the metaphorical dark, TGP would treat them the same way it treats Attorney Houston.

Counsel and the Court should demonstrate empathy to Houston and understanding to Appellant's situation with its former counsel.

## 5.0 CONCLUSION

For the foregoing reasons, the Court should deny Appellee's Motion to Dismiss. Appellee filed this Motion in bad faith, and did not demonstrate the bad faith, negligence, or indifference necessary to dismiss Appellant's bankruptcy appeal. This Court has before it an opportunity to

---

[5] Oath of Admission to the Florida Bar. https://www.floridabar.org/prof/regulating-professionalism/oath-of-admission/.

reward taking advantage of an attorney's heartbreaking misfortune, or to make a pronouncement that this is not "the way." It should choose the latter.

A reasonable opportunity for successor counsel to draft and file an initial brief should be provided, and this appeal should be decided on its merits.

Dated: November 23, 2024.  Respectfully submitted,

/s/ Marc J. Randazza
Marc J. Randazza
  Florida Bar No. 625566
RANDAZZA LEGAL GROUP, PLLC
2 S. Biscayne Blvd., Suite 2600
Miami, FL 33131
Telephone: 786-800-3500
ecf@randazza.com

John C. Burns (*PHV Forthcoming*)
Burns Law Firm
P.O. Box 191250
St. Louis, MO 63119
Telephone: 314-329-5040
TBLF@pm.me

*Attorneys for Appellant*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on November 23, 2024, a true and correct copy of the foregoing document was filed electronically with the Clerk of Court and has been served on all parties of record through the CM/ECF system.

/s/ Marc J. Randazza
MARC J. RANDAZZA